**SCOTT FRAKES,**
840 Weinert Road, Apt. 307
West Bend, WI 53095

      Plaintiff,

vs.                                        **Case No:** 19CV637

**LVNV FUNDING, LLC,**
200 Meeting Street, Suite 206
Greenville, SC 29601

And

**MESSERLI & KRAMER, P.A.,**
3033 Campus Drive, Suite 250
Plymouth, MN 55441

      Defendants.

## COMPLAINT

**NOW COMES**, the Plaintiff, Scott Frakes, by and through his attorneys, Briane F. Pagel and

Lawton & Cates, S.C. and as and for a complaint in the above matter hereby pleads as follows:

1. Plaintiff Scott Frakes is a Wisconsin citizen residing at the address shown in the caption

   hereto: 840 Weinert Road, Apt. 307, West Bend.

2. Defendant LVNV Funding LLC is a Debt Collection company in the business of buying

   and collecting on consumer debts, with a principal place of business located at the

   address in the caption hereto: 200 Meeting Street, Suite 206. Upon information and

   belief, the primary business of LVNV is to attempt to collect consumer debts which were

1

either owed to another entity or which were in default when LVNV obtained the rights to collect them.

3. LVNV uses the US mails in its primary business.

4. Defendant Messerli ("Messerli") is a law firm located at the address shown in the caption hereto: 3033 Campus Drive, Suite 250. Plymouth, MN 55441. Upon information and belief, the primary business of Messerli is to attempt to collect consumer debts which were either owed to another entity or which were in default when Messerli obtained the rights to collect them.

5. Messerli uses the US mails in its primary business.

## JURISDICTION AND VENUE

6. Washington County, where Frakes resides, is located in the Eastern District of Wisconsin.

7. Plaintiff brings this action under 28 U.S.C. § 1331, as it involves a federal question.

## FACTUAL ALLEGATIONS

8. On August 31, 2018, Messerli on behalf of LVNV as its client filed a summons and complaint alleging that Frakes owed money arising from a consumer credit transaction; this action was Washington County Case Number 18 SC 1779 (the "state court suit").

9. Upon information and belief, the amount sought in the state court suit was a consumer debt from a credit card Frakes was alleged to have opened and used for his own personal, family, and household purposes.

10. Upon information and belief, the debt in question was one which could be paid in installments over time and was an 'open-end' credit plan, meaning that it was one on

2

which a consumer could make charges, then pay for those charges and re-use the account for new credit, as a traditional 'credit card' would work.

11. In the complaint that Messerli filed against Frakes, Messerli and LVNV demanded payment in full, including amounts that would not be due if the account were still able to be paid over time.

12. In the complaint Messerli filed against Frakes, the debt Messerli was suing on had been 'accelerated' meaning that Messerli and LVNV were insisting on payments of all amounts due at once, rather than in installments over time.

13. A consumer credit transaction may only be 'accelerated' if a consumer has defaulted, as that term is defined by Wisconsin law.

14. A consumer credit transaction may only be 'accelerated' after providing the debtor with a notice that the consumer is in default and spelling out his right to cure the default.

15. Frakes, under the circumstances alleged in the Messerli complaint, would have been entitled to a notice of default and a right to cure prior to any creditor or assignee of a creditor accelerating his debt.

16. A creditor, merchant or assignee of a consumer credit transaction may not file a lawsuit against a debtor unless 15 days (at a minimum) have passed since the giving of a notice of right to cure default.

17. Frakes has never been provided a valid right to cure any default on any credit account of his from Defendants.

18. Frakes was, prior to the state court suit being filed, provided what purported to be an account agreement containing the terms and conditions he was alleged to have been bound by.

3

19. That account agreement contained terms of default that made it unlikely a prior creditor would have complied with Wisconsin's notice of right to cure default statute; the terms of default as defined in the account agreement were inconsistent with Wisconsin's laws governing default; and the notice requirement of the account agreement upon default was inconsistent with Wisconsin law regarding the amount of notice and cure period that must be given to a consumer; accordingly it is unlikely that any proper, legally-sufficient notice of right to cure default had been given to Frakes, since doing so would have required the creditor or assignee to ignore the agreement they were purporting to enforce.

20. Attorney James Kachelski is one of Messerli's lawyers who appeared on behalf of the plaintiff in the state court case filed against Frakes.

21. Kachelski was admitted to practice in Wisconsin in 1993.

22. The complaint in state court against Frakes was filed on August 31, 2018.

23. In the month prior to the filing of the Complaint against Frakes, August 2 to August 31, 2018, Wisconsin online court records show that Kachelski was the attorney of record on 496 cases filed in those 30 days.

24. Online court records show, also, that Kachelski was the attorney of record on 41 cases first filed on August 31, 2018, including Frakes's, and it is reasonable to infer that Kachelski reviewed all 41 of those cases on the same day, meaning that on the day he reviewed Frakes's case, he reviewed 40 other cases as well, and approved all 41 for filing.

25. The return date (the date on which Frakes was required to appear in court or file an answer in the case Messerli filed against him) was scheduled for September 24, 2018. Court records show that no appearance was made that day by either party, and that

4

Messerli and LVNV had not filed proof that Frakes had been served with the action by that date.

26. Between September 1, 2018 and September 24, 2018, Wisconsin online court records show that Kachelski signed off on or otherwise put his name to an additional 312 cases.

27. This means that while Kachelski was allegedly reviewing the claim he intended to make against Frakes, he had already filed in the past month and was responsible for monitoring 496 cases, and in the time after he filed the Frakes case and had to prepare for the return date, he filed another 312 cases, for a total of 808 cases filed in just 54 days.

28. As of May 1, 2019, Wisconsin online court records indicate that Kachelski has 219 hearings scheduled in  multiple counties over the next 28 days, from May 1 to May 28, 2019.

29. Of note is that of those 219 those hearings, 134 are for return dates in Milwaukee County; Milwaukee County requires a plaintiff's attorney to appear on the return date or face dismissal of the case (pursuant to Milwaukee County Local Rule 3.79A, https://www.wisbar.org/Directories/CourtRules/Wisconsin%20Circuit%20Court%20Rule s/Milwaukee%20County%20Circuit%20Court%20Rules.pdf ).

30. Upon information and belief, Kachelski's court appearance calendar was essentially the same during the time he was allegedly reviewing Frakes' complaint and preparing to file it, meaning that while he was overseeing the filing of 808 cases in 54 days, he was also appearing in court an average of 54 times per week, meaning that on average, Kachelski was at all times material hereto in court on 10+ matters per business day while also reviewing a minimum of  21 new filings per business day.

31. Kachelski has since being admitted to practice been attorney of record in more than 5,000 cases; online circuit court records will not return results when the results exceed 5,000, and a search by Kachelski's bar number cannot return results because there are "too many results." Kachelski's activities in Wisconsin's five most populous counties according to online records show that he has been attorney of record in

   a. 4,636 cases in Milwaukee County,

   b. 1,110 cases in Dane County,

   c. 761 cases in Waukesha County,

   d. 589 cases in Brown County, and

   e. 582 in Racine County.

32. While many of the cases Kachelski is attorney of record in are listed as "closed," a "closed" case in Wisconsin is one in which a judgment of some sort has been entered; the fact is that in collection cases, much of the activity comes after judgment is entered, as garnishments, supplemental examinations, and other executions are available only after a judgment is entered in most consumer credit cases, so it is reasonable to infer that a closed case still represents work for Kachelski.

33. Upon information and belief, Kachelski would have at all times material hereto had to engage in other day-to-day activities including attending to written and in-person discovery, communicating with opposing counsel about cases, attending meetings and continuing legal education, reading emails and other correspondence, and supervising other attorneys or staff, and as such, upon information and belief Kachelski's schedule of litigation and other activities was such that Kachelski did not and could not have engaged

in a meaningful review of Frakes' complaint and file before approving and signing the complaint and authorizing its filing and service.

34. Further, the information available to Kachelski at the time of filing the action was so minimal that any amount of time he would have spent reviewing it would not constitute a "meaningful" review. Kachelski filed no documents with the summons and complaint.

35. A review of documents provided to Frakes prior to and after the filing of the lawsuit indicates several problems with the file that should have been caught by an attorney reviewing Frakes' file, but apparently were not. These problems were and are:

    a. An initial letter from Messerli & Kramer identified the prior creditor as "WebBank." This letter was sent on September 26, 2016, and constituted Messerli's first written contact with Frakes.

    b. A second letter was then sent on September 29, 2016, again identifying WebBank as the prior creditor, this one saying that Messerli has "received payments totaling $0.00 since September 23, 2016 when this account was placed with our office." It suggested that Frakes go to www.mkbillpay.com. It is not clear why this letter was sent out, as it appears to demand payments during the initial 30-day validation period.

    c. A third letter sent on September 30, 2016 stating that it was an "AMENDED" letter, now identifying the prior creditor as "Credit One Bank, N.A."

    d. A fourth letter, sent on October 12, 2016 in response to Frakes' dispute letter, stating that the original creditor was Credit One Bank NA and asserting the account had been opened on May 14, 2015 and charged off on May 22, 2016. This letter included billing statements from May 14, 2015 through May 20, 2016;

7

upon information and belief, Messerli did not have these statements available

prior to first contacting Frakes. This October 2016 letter also included a purported

account agreement with Credit One Bank but that account agreement had a

copyright date of 2016 on it, when Frakes' account was opened in 2015; further,

that account agreement had illegal provisions regarding Frakes' rights in the event

of a default and regarding what would or could constitute a default.

36. Assuming Kachelski reviewed the documents provided to Frakes, and *only* those, before

approving the complaint, such review would not be meaningful regardless of how much

time was spent on it, because it did not include any billing statements sent after May 20,

2016, and so did not show whether any payments were made or other adjustments were

done on the account prior to sale.

37. Further, no materials provided to Frakes were in any way a notice of right to cure a

default.

38. Had Kachelski reviewed this matter in a meaningful way, he would have likely noted the

illegal clauses, as well and the lack of a valid notice of right to cure default in the file.

39. Further, a close review of the billing statements provided to Frakes shows problems that

should have spurred further investigation. Among those problems are that on the final

billing statement, dated May 20, 2016, the "New Balance" is $611.93, and the "Minimum

Payment Due" is likewise $611.93. However, the *actual* balance owed as of that date

appears to be $646.93. This is determinable by taking what the billing statement says was

the "Past Due Amount" as of May 20, 2016 ($179.00) and the "Amount Due This

Period" ($467.93) and adding them to get $646.93. In all but one of the billing statements

sent to Frakes by Messerli, the "Minimum Payment Due" is *exactly* equal to the sum of

"Past Due Amount" and "Amount Due This Period". The *sole* exception to this is the final billing statement containing a minimum payment of $611.93, which is *less than* the sum of "Past Due Amount" and "Amount Due This Period."  A lawyer reviewing this matter in a meaningful way would have wanted to have an explanation for why the $611.93 figure appears to be calculated in a different manner than the "Minimum Payment Due" was calculated on *every single other bill.* Conversely, a lawyer who simply is looking to plug numbers into a form complaint without analysis of those numbers would use the $611.93 figure.

40. A further problem with the documents is that the account agreement provided Frakes says that the "Minimum Payment Due" is "5% of your outstanding balance, rounded up to the next whole dollar, or $25.00, whichever is greater, plus any Late Payment Fee for the current billing cycle, and any Past Due Amount." Using this language, the minimum payment due on any statement can be calculated.

  a. On the statement for the period of time from March 21, 2016 to April 20, 2016 (the second last billing statement provided to Frakes) the "Minimum Payment Due" is $214. This statement says that the total balance Frakes owed as of April 20, 2016, was $558.49. That means that the Minimum Payment Due would be $28 ($27.92 is 5% of $558.49, rounded up to the next whole dollar), plus any "Late Payment Fee" in the current cycle, which on the April 20, 2016 bill is $35, plus any "Past Due Amount" which on the April 20, 2016 bill is $151.00." Thus according to the account agreement using the information on the April 20 bill, the Minimum Payment Due would be $28 + $35 + $151, or $214, and this is the amount set forth on that billing statement.

b. But for the final bill, for the period of April 21, 2016 to May 20, 2016, the "New Balance" is $611.93, which means the Amount Due This Period should be would be 5% of that total balance rounded up ($30.59 rounded up to $31), plus any "Late Payment Fee" in the current cycle, which is shown to be $35, so the "Amount Due This Period" should be $66. This is how the "Amount Due This Period" is calculated on every other bill. But on the May 20, 2016 bill, the "Amount Due This Period" is *$467.93,* more than $400 greater than the agreement allows for, without explanation.

41. This makes it seem as though the account balance was accelerated prior to April 21, 2016, since prior to receiving this bill Frakes could have paid his balance in installments rather than in full, but after this bill was sent (assuming it was sent to Frakes) Frakes now owed the whole amount.

42. Accelerating the balance in that way, while illegal in Wisconsin, would be consistent with the apparent practice of Credit One, which says in its purported account agreement that Frakes can be in default after missing only one payment and that Credit One can, upon default, "declare your entire balance immediately due and payable… all without prior notice or demand."

43. Upon information and belief, Credit One illegally accelerated Frakes' account without first providing him a notice of right to cure default and 15 days to cure that default. Credit One then apparently or allegedly assigned the illegally-accelerated account to LVNV.

44. The lack of any meaningful review is further made apparent by the use of a form complaint with little change from case to case. The form complaint used by Messerli in this case is, upon information and belief, substantively identical to those used in every

10

Messerli small claims consumer debt case, with the only differences being the defendant's name, and insertion of the creditor/assignee's name, account number, date opened, and balance owed. The form complaint is devoid of any allegations related to the date of default on the account or the manner of default on the account; upon information and belief this information is omitted from the form complaint attorneys at Messerli are to review because having Messerli attorneys verify independently the date of a default would require that attorney to go through billing statements until such time as they were able to ascertain that the account was in default as defined under Wisconsin law, and this would take additional time for the attorney to determine. Likewise, upon information and belief, attorneys at Messerli are not reviewing whether a notice of right to cure default was sent because doing so would entail them having to verify that the notice was sent after an actual default (as defined by Wisconsin law) had occurred, and that the notice complied with the statutory prerequisites including itemization of delinquency fees and other legally-required elements, and this too would add to the time attorneys must spent on the complaint review, as well as adding to the number of documents Messerli must receive and maintain and be ready to produce if necessary.

45. There are additional reasons to believe that Messerli attorneys are not in any way meaningfully engaged in the review of their collection files, as noted herein, including but not limited to the errors in identification of creditors or assignors.

46. Debtors who receive a letter, call, or court paper from Messerli reasonably assume that a lawyer reviewed the matter and that the lawyer has made a legal, trained, sophisticated judgment about the validity of the debt and the ability to legally pursue collection when, in fact, based on Messerli's practices, it is likely that no lawyer has meaningfully

11

reviewed any matter before it is brought to suit, and Kachelski did not actually meaningfully review any documents or materials sent to Frakes before they were sent.

47. Frakes reasonably assumed that Kachelski had reviewed the matter and had made a legal, trained, sophisticated judgment about the validity of the debt and the ability to legally pursue collection when he received the paperwork; in fact Frakes wrote to Messerli and later contacted them to attempt to obtain information and to resolve the debt, based in substantial part on his belief that an attorney had actually meaningfully reviewed his case and determined that he was likely to lose.

48. Upon information and belief, LVNV , which is the plaintiff in the state court action against Frakes, was aware at all times of Messerli's direct treatment of Frakes, and of Messerli's high-volume litigation practices.

49. LVNV either directed Messerli to engage in such high-volume litigation, or benefitted from it and was aware of the high-volume litigation and did nothing to stop it.

50. As evidence that LVNV either benefits from or directs Messerli's high-volume litigation, online Wisconsin Circuit Court records show that Kachelski has been attorney of record in 386 cases filed by LVNV in Wisconsin. Other Messerli lawyers have similarly-high numbers of filings on behalf of LVNV in Wisconsin, including Attorney Jillian Walker (796 cases in which she appeared on behalf of LVNV), Attorney Ryan Supple (125 cases in which he appeared on behalf of LVNV) and Attorney Gina Ziegelbauer (245 cases on in which she appeared on behalf of LVNV).

51. LVNV either directed Messerli to file those cases, or was aware that the firm was doing so and did nothing to stop it.

52. Upon information and belief, LVNV's agreements with Messerli allow LVNV to place files with Messerli electronically, and Messerli then agrees to file suit on all such matters placed electronically, doing so within a certain period of time after they are placed with Messerli. This system encourages and allows high volume litigation of the sort herein alleged.

53. Upon information and belief the agreements under which LVNV purchases debt limit the amount of documentation LVNV receives on the debt, and requires LVNV to make specific requests, and pay additional amounts, if it wants any other documentation from prior assignees or creditors.

54. LVNV's business is to buy debt after it is in default and attempt to collect on that debt. The debt it buys, including Frakes', is consumer debt – debt incurred by an individual intended primarily for personal, family, or household purposes.

55. Because LVNV cannot expect to collect 100% of all the debt it buys, and because the debt it buys is typically in smaller-dollar amounts, LVNV has an incentive to keep the costs of collection down, and this incentive gives LVNV a motive to reduce the amount of money it spends in attempting to collect those debts; as a result, it is likely that LVNV is making a deliberate decision to minimize the amount of debt documentation it obtains and provides to its lawyers.

56. Further, Messerli would be under the same pressures as LVNV: because the amounts of debts typically are too low to allow Messerli to charge hourly for its work, it is likely that Messerli receives a percentage of the money it collects on behalf of LVNV. Messerli would therefore want to minimize the amount of work done by attorneys on a debt

13

collection matter, and maximize the number of collection files each attorney is responsible for, to ensure that its business is profitable.

### First Cause of Action:
### Breach of the Obligation Of Good Faith, Section 421.108:
### (LVNV Only):

57. The plaintiff re-alleges and incorporates by reference all previous allegations.

58. Frakes is alleged to have entered into an agreement with Credit One to allow him to borrow money from Credit One and pay it back in installments.

59. LVNV purports to be an assignee of that agreement and as such is subject to all the claims and defenses Frakes could raise against LVNV.

60. LVNV's actions breach the statutory duty of good faith and fair dealing: LVNV's conduct in continuing to enforce a contract with illegal provisions, which was illegally accelerated, and which is then sought to be enforced via high-volume litigation in which little to no information is given to its lawyers, constitute a violation of its statutory duty of good faith and fair dealing.

61. Frakes is entitled to damages and fees for this violation.

### Second Cause of Action:
### False Representation of Meaningful Involvement
### Violation of 15 U.S.C. § 1692e:
### (Defendant Messerli Only):

62. The plaintiff re-alleges and incorporates by reference all previous allegations.

63. The FDCPA, at 15 U.S.C. § 1692e, requires that debt collectors refrain from falsely representing or implying that an attorney was meaningfully involved in the debt collection process when in fact an attorney was not meaningfully involved.

64. Messerli falsely represented or implied that an attorney was meaningfully involved in the debt collection process when it filed the complaint against Frakes and otherwise engaged

14

in debt collection against him as alleged herein. In fact, there was no meaningful attorney involvement in the debt collection process, as evidenced by Messerli's extensive caseload and its lawyers' actions and omissions herein.

65. As a direct and proximate result of the foregoing, the plaintiff is entitled to an award of statutory damages and actual damages.

**Third Cause of Action:**
**False Representation of Status/Character of Debt:**
**(Both Defendants):**

66. The plaintiff re-alleges and incorporates by reference all previous allegations.

67. A federal court has recently held that a "ruling on remedies under the [Wisconsin Consumer Act] is of no consequence for purposes of the FDCPA" as regards claims involving filing suit without first complying with Wisconsin's notice of right to cure default claims.

68. The FDCPA broadly prohibits falsehoods or misrepresentations concerning the legal status of a debt.

69. In Wisconsin, a creditor lacks a cause of action to sue on a debt that has not been properly accelerated. A customer sued by a creditor who has failed to provide a proper notice of right to cure default is entitled to have any action against him dismissed.

70. By filing the action against Frakes when no legally valid right to cure default had been given to Frakes, both defendants used false, deceptive and misleadingly represented that the debt had been properly accelerated, and that they were entitled to proceed on the state court complaint rather than having it dismissed when in fact the debt was not fully due or accelerated because no notice of default and right to cure had been given Frakes.

## DAMAGES ALLEGATIONS

71. The plaintiff re-alleges and incorporates by reference all previous allegations.

72. As a result of the foregoing, Frakes has suffered statutory and actual damages, including but not limited to emotional distress because he believed an attorney had made a meaningful review of his case prior to filing it, when no attorney did so, and Frakes's distress included but was not limited to worry about a judgment against him, a judgment being entered against him.

73. Upon information and belief, LVNV engages in its high-volume litigation tactics with the deliberate intent of depriving customers of their rights under the Wisconsin Consumer Act, and their actions do in fact deprive said customers of their rights, and as a direct and proximate result, Frakes is entitled to an award of punitive damages under Wisconsin law for any violation of the Wisconsin Consumer Act.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff respectfully requests that the Court find that the defendants have violated the FDCPA and Wisconsin Consumer Act and award such relief as the Court finds necessary to redress the injuries to the plaintiff arising from the defendants' conduct, including but not limited to statutory damages, actual damages, punitive damages, and attorney's fees.

16

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES IN THIS ACTION.**

Dated: This 1st day of May, 2019

**Lawton & Cates, S.C.**
Attorneys for Plaintiff, Scott Frakes
*Electronically Signed By:*

*/s/ Briane F. Pagel*                          _____
Attorney Briane F. Pagel, Jr.
State Bar No. 1025514

P.O Address:
345 W. Washington Ave. Suite 201
P.O. Box 2965
Madison, WI 53703
P: 608.282.6200
F: 608.282.6252
bpagel@lawtoncates.com

17